Filed 3/28/25  P. v. Readus CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. PIERRE RENEE READUS, Defendant and Appellant. | D083760 (Super. Ct. No. SCD255514) |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Robin H. Urbanski, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

Pierre Renee Readus appeals the order denying his petition under former Penal Code section 1170.95 (now § 1172.6)[2] for resentencing on his conviction of voluntary manslaughter. Appointed counsel argues the court's predicate finding that Readus was the actual killer is not supported by substantial evidence. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Readus shot and killed Rodney Harmon on or about November 16, 2014, at the 3 Kings Hookah Lounge in San Diego, California where Harmon worked in security. The People charged Readus with murder (§ 187, subd. (a)), alleging he used a firearm in Harmon's death (§ 12022.5, subd. (a)), discharging it intentionally and personally (§ 12022.53, subd. (d)). This, the People alleged, was done "for the benefit of, at the direction of, and in association with a criminal street gang," in violation of section 186.22, subdivisions (b)(1) and (b)(5). The People also charged Readus, a felon, with possession of a firearm, a violation of section 29800, subdivision (a)(1).

In 2015, Readus pled guilty to the lesser included offense of voluntary manslaughter (§ 192, subd. (a)), admitting that he personally used a firearm in commission of that offense (§ 12022.5, subd. (a)). He also admitted to acting in the "heat of passion or imperfect self-defense," and that he "personally used a firearm in the commission of" the "unlawful killing of

---

[1]     We resolve this matter by memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1.

[2]     Section 1170.95 was amended effective January 1, 2022 and then renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58, § 10, (Assem. Bill No. 200).) We refer to the subject statute by its current number throughout this opinion. Further statutory references are to the Penal Code.

Rodney Harmon." He accepted a plea agreement in exchange for a stipulated sentence of 42 years and dismissal of the remaining charges.

Approximately six years later, in June 2021, Readus filed a petition under section 1172.6 requesting that his voluntary manslaughter conviction be vacated and that he be resentenced. He asserted that he was not the actual killer, pled guilty to avoid being convicted of murder under the natural and probable consequences doctrine and that he could not now be convicted of murder because of changes made to the Penal Code in the intervening years.

The court found Readus made a prima facie showing on his petition, issued an order to show cause and held an evidentiary hearing. At the February 6, 2024, evidentiary hearing the People produced five witnesses and introduced photographic and video footage evidence detailing Readus's actions and movements both before and after Harmon's death and the shooting itself.

According to witness testimony and video footage confirmation, approximately one month before the shooting, Readus checked into an October 16, 2014, probation appointment wearing a "black-hooded sweatshirt with [a] Converse All Star logo on the left chest."

Two days later, Readus was admitted to Sharp Grossmont where he had surgery to repair a broken jaw. He sustained injuries to his jaw in an altercation with Harmon at a music venue where Harmon worked providing security services. Readus attended his November probation meeting with "extreme swelling to his face, staples on the right side of his head, [and an] extremely swollen jaw." He told his probation officer he'd been "jumped," and complained on social media that he might as well be eating through a straw.

Surveillance footage from a 7-Eleven convenience store, which was half a block away from the 3 Kings Hookah Lounge, placed Readus and two

companions in that location at approximately 2:13 a.m. on November 16, just under two hours before the shooting. In that footage, Readus has "a mustache and a thin tightly trimmed beard." He wore a "letterman-style jacket," a gold necklace or necklaces, a distinctive multicolored zebra-billed hat, white pants, and dark or black shoes with a visible white sole at the bottom.

Thereafter, Readus had an altercation with Harmon. In that incident Harmon obtained a gold chain from Readus.

Harmon was shot at 4:00 a.m. that morning. Video footage of the incident showed a single assailant, a male with a thin mustache and a thin closely trimmed beard, shooting approximately four times and exiting the hookah lounge by running eastbound on El Cajon Boulevard. The shooter wore a "black-hooded sweatshirt with [a] Converse All Star logo on the left chest," black pants, and "dark or black shoes with a white sole all the way around the bottom." In the footage, the shooter is not wearing a gold necklace.

Following Harmon's death, police investigators interviewed Harmon's companion, Z.K., who was at the hookah lounge the night of the shooting. Z.K. gave a statement about the events of that night. He was shown a photographic lineup to identify the shooter. According to police investigators, Z.K. saw booking photos, two of which he said "generally look liked the shooter," with one of the photos being Readus and the other being a filler that was uninvolved. In an interview later in the day, Z.K. gave the investigator a damaged gold chain indicating it came from Harmon.

The necklace was impounded and sent to the San Diego Police Department Crime Laboratory for DNA testing. The crime laboratory

analyst testified that DNA testing of the clasp of the necklace yielded a single source match to Readus.

After Readus was arrested for Harmon's death, a sheriff's deputy broke up a holding cell fight that occurred between Readus and another prisoner. Readus reported to the deputy that the fight occurred because "of his case, that he had killed a gang member." The deputy looked up the case and found Readus was accused of killing Harmon, a documented 5-9 Brim gang member, as was the other prisoner involved in the fight with Readus.

From the various video footages obtained in its investigation, police created comparison photos for the shooter at the hookah lounge. Significant to investigators was that the shooter had a "very light thin mustache or, like, a beard," as Readus appeared to have in the 7-Eleven video footage taken the night of the murder. Also significant was that the shooter wore a sweatshirt with a Converse All Star logo on the left chest, as Readus did in his October 2014 probation hearing, and dark or black shoes with a white sole all the way around the bottom, as Readus did in the 7-Eleven video footage. The shooter wore no gold necklace, as Readus did in the 7-Eleven video footage. The police comparison photos were introduced into evidence.

Based on the evidence presented at the hearing, the court concluded Readus was the actual shooter and, therefore, not entitled to relief under section 1172.6.

Readus appeals, alleging the court's finding that he was the actual shooter was not supported by substantial evidence. He argues that the evidence suggests, but does not prove beyond a reasonable doubt, that he was the shooter. Readus asserts the court's finding "relied primarily on the fact that [he] wore a shirt to see his probation officer in October which looked like the shirt worn by Harmon's shooter in November." Appellant contends there

5

was nothing "particularly distinctive" about the shirt, and that this was a "weak identification case."

We are not persuaded.

## DISCUSSION

Senate Bill No. 1437 (2017–2018 Reg. Sess.) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 846–847.) An actual killer is ineligible for relief under section 1172.6. (*People v. Davis* (2024) 107 Cal.App.5th 500, 512.)

"In its current form, section 1172.6 applies to those who pled guilty to manslaughter after being charged with murder and who would have been subject to prosecution for murder under a felony murder theory, the natural and probable consequences doctrine, or any other theory of imputed malice. (§ 1172.6, subd. (a).)" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.) To be eligible for relief, a petitioner must make a prima facie showing that he could not presently be convicted of murder under changes to theories of murder liability. (§ 1172.6, subd. (a)(3).)

The section 1172.6 petition process "begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of the changes to [Penal Code] Section 188 or 189." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) "When the trial court receives a petition containing the necessary declaration and other

6

required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Ibid.*)  If the petitioner makes a prima facie showing of entitlement to relief, the court issues an order to show cause.  (§ 1172.6, subd. (c).)

Once an order to show cause has issued, the court must hold an evidentiary hearing to determine whether to vacate the murder conviction. (§ 1172.6, subd. (d)(1).)  At the evidentiary hearing, the burden is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under current California law.  (*Id.*, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Ibid.*)

At an evidentiary hearing under section 1172.6, subdivision (d)(3), "the superior court acts as an independent fact finder and determines whether the People have met their burden in proving the defendant guilty of murder" under valid law. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1016.)  "A trial court's factual findings at a section 1172.6, subdivision (d)(3), hearing are reviewed for substantial evidence.  [Citations.]  Under this standard, the record is reviewed ' " 'in the light most favorable to the judgment' " ' and a reviewing court decides ' " 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " '  [Citation.]  '[W]e look to whether the prosecution has introduced sufficient evidence of " ' "reasonable, credible, and of solid value" ' " to "support a finding beyond a reasonable doubt" ' that petitioner was guilty."  (*Id.* at p. 1017.)

7

Under this standard, we conclude the evidence was sufficient to prove beyond a reasonable doubt that Readus was the actual shooter and ineligible for resentencing relief.

The evidence presented by the People established Readus was in the vicinity of the hookah lounge in the early morning hours of November 16 before the 4:00 a.m. shooting of Harmon. Readus was captured on video footage at the 7-Eleven store half a block away from the 3 Kings Hookah Lounge at 2:00 a.m.

Witnesses reported to police that Readus was involved in an altercation with Harmon before the shooting, and Harmon's friend, Z.K., gave police a gold necklace Harmon obtained from Readus in that altercation. DNA testing on the necklace disclosed a single source match to Readus.

Photos prepared from video footage presented during the hearing revealed the shooter had a "very light thin mustache or, like, a beard," wore a sweatshirt with a Converse All Star logo on the left chest, dark or black shoes with a white sole all the way around the bottom, but no gold necklace. Comparison photos showed Readus wore a sweatshirt with a Converse All Star logo on the left chest to his October 2014 probation meeting. He was wearing a gold necklace or necklaces and dark shoes with a white sole all the way around the bottom in the photo prepared from the 7-Eleven video footage. Readus's gold necklace had been taken by Harmon earlier in the evening and could not have been worn by the shooter.

Z.K., who was at the hookah lounge when the shooting occurred, identified Readus in a photo lineup as one of two possible assailants. The second photo identified by Z.K. was of "a filler that was uninvolved."

After he was taken into custody Readus was in a holding cell fight with a fellow prisoner, after which he admitted to a deputy sheriff that the fight

8

was "because of his case, that he had killed a gang member." Readus was on trial for the murder of Harmon, a 5-9 Brim gang member.

None of Readus's arguments persuade us differently. He contends his identification as the shooter was not reliable because it was based on his clothing "as opposed to height build or facial characteristics." While it is true that the shooter's clothing was *part* of the identification evidence considered, so too was the fact that the shooter had a thin mustache or facial hair.

Readus contends he did not admit to being the shooter after his holding cell fight, but only that his case involved killing a gang member. Readus's reported statement was the fight was "because of his case, that he had killed a gang member." There was no objection to the testimony at the evidentiary hearing. Therefore, the court was entitled to consider whether the statement constituted a statement against interest or admission and to accord it whatever weight to which it was entitled. (See *People v. Williams* (2020) 57 Cal.App.5th 652, 662–663 [a court may consider reliable hearsay during a resentencing evidentiary hearing].)

Finally, Readus asserts the evidence at most established appellant was in the area of the club within hours of the shooting and had a motive to harm the victim. Even setting aside the evidence of timing and motive, the collective evidence identified Readus as the shooter. The evidence presented at the evidentiary hearing included the comparative photos and video evidence, Z.K.'s identification of Readus's booking photo in a photo lineup, Readus's necklace obtained by Harmon on the morning of the shooting, and Readus's statement as to the reason for his holding cell fight with a 5-9 Brim-affiliated fellow prisoner and was more than sufficient to constitute substantial evidence Readus was the actual shooter. As such he is not entitled to resentencing relief under section 1172.6.

9

## DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.